IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>$980,050.00 UNITED STATES CURRENCY,<br><br>        Defendant. | Civil No. 8:23CV363 |

## **CLAIMAINT AHMED ALRUMAIHI'S ANSWER AND AFFIRMATIVE DEFENSE**

NOW COMES, Claimant Ahmed Alrumaihi, by and through undersigned counsel, and submits the following answer to the government's complaint for forfeiture (Dkt. 1), as follows:

### Nature of the Action

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

**ANSWER: Claimant admits that the government brings this action for alleged violations of 21 U.S.C. 881.**

### The Defendant *in rem*

2. Defendant property is $980,050.00 United States currency seized by law enforcement from a vehicle operated by Dennis Maric during a traffic stop on westbound Interstate 80 near mile marker 390 on April 27, 2021. The passenger was identified as Rodomir Maric.

**ANSWER: Claimant admits that the property was seized, but denies there was a lawful seizure.**

3. The U.S. Customs and Border Protection (CBP), currently has custody of the defendant property.

**ANSWER: Claimant lacks sufficient knowledge to admit or deny the allegation. Accordingly, Claimant demands strict proof thereof and denies this allegation.**

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction for an action commenced by the United States pursuant to 28 U.S.C. § 1345, and for an action for forfeiture pursuant to 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action pursuant to 21 U.S.C. § 881.

**ANSWER: Claimant admits a Court may have jurisdiction over a forfeiture action, but denies that the Court has jurisdiction over this particular action.**

5. This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

**ANSWER: Claimant admits a Court may have jurisdiction over a forfeiture action, but denies that the Court has jurisdiction over this particular action.**

6. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

**ANSWER: Claimant admits venue is proper without waiving jurisdictional challenges.**

## Basis for the Forfeiture

7. Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 2) proceeds traceable to such an exchange, and/or 3) money, negotiable instruments and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

**ANSWER: Claimant denies.**

**Facts**

8. On April 21, 2021, Lancaster County Sheriff's Office (LCSO) Officer John Hudec who also served as a Homeland Security Investigations ("HSI") Task Force Officer ("TFO"), was travelling westbound on Interstate 80 when he observed a 2019 Toyota 4-Runner following too closely to another vehicle. Officer Hudec stopped the 4-Runner for the traffic violation and noticed two occupants as he approached. He identified the driver as Dennis Maric and the front passenger as Radomir Maric, who was Dennis' father. LSCO Deputy Jason Henkel arrived on the scene and assisted with the traffic stop.

**ANSWER: Claimant admits to the fact an alleged traffic stop occurred, but denies that a traffic violation occurred.**

9. Dennis Maric told TFO Hudec that he rented the car from a rental company at Chicago's O'Hare International Airport and was driving back to Los Angeles with his father for a "road trip". Dennis said that after renting the vehicle, he and his father had driven until 2 a.m., slept, and then drove an additional four hours until the traffic stop. TFO Hudec believed that this itinerary was inconsistent with a vacation "road trip".

**ANSWER: Claimant lacks sufficient knowledge to admit or deny the allegation. Accordingly, Claimant demands strict proof thereof and denies this allegation.**

10.     TFO Hudec asked if Dennis had any illegal items in the car. Dennis responded that he did not have any firearms or drugs in the car, but admitted that he did have "a lot" of money. TFO Hudec inquired how much money Dennis had in the vehicle and he responded, "like a million dollars". TFO Hudec asked Dennis if he had a money courier license and Dennis said that he did not. Dennis explained that his father-in-law (David Sajasi) had friends in Chicago and his father-in-law told Dennis that if he picked up that currency, he (Dennis) would receive $5,000.00 in cash for his efforts. Deputy Henkel also spoke with Dennis who

again confirmed that he was not registered with FinCEN as a money courier and was not licensed as a courier in Nebraska.

**ANSWER: Claimant lacks sufficient knowledge to admit or deny the allegation. Accordingly, Claimant demands strict proof thereof and denies this allegation.**

11. Based on the above information, officers searched the vehicle's trunk and found a Nike duffel bag filled with a large number of banded $100 bills. TFO Hudec seized the currency and released Radomir and Dennis from the scene. Neither Dennis nor Radomir signed abandonment forms, but both claimed the United States currency was not theirs. Officers then transported the currency to the Lancaster County Sheriff's Office where it was photographed and subjected to a controlled substance field test. The currency, which consisted entirely of $100 dollar bills and one $50 dollar bill, tested positive for marijuana.

**ANSWER: Claimant admits that officers seized the property, but denies the remaining allegations.**

12. On May 26, 2021, CBP Administrative Agency for Fines, Penalties and Forfeitures (FP&F) sent seizure notices to Dennis Maric, Radomir Maric and David Sajasi (Dennis' father-in-law). On July 6, 2021, FP&F received a timely Petition for Remission, dated June 25, 2021, from Ahmed Al-Rumaihi. The petition, submitted through Ahmed Al-Rumaihi's attorney Haytham Faraj, alleged that the seized currency derived from the sale of Ahmed Al-Rumaihi's interest in a corporation named Fibercan. The petition explained that Ahmed Al-Rumaihi wired $2 million to Fibercan on July 1, 2019, for the purchase of 200 shares of Fibercan stock. (According to Fibercan's Articles of Incorporation, the corporation had a total of 1000 shares of stock). Approximately two years later, on April 15, 2021, Ahmed Al-Rumaihi sold 100 shares of stock back to Fibercan for $1 million. Omar Ahmad, Fibercan's sole officer and registered agent, provided the currency derived from that sale to Juan Tamayo, an Illinois attorney, who then gave the currency to Dennis. The

petition did not explain the approximate $20,000.00 discrepancy between the amount of the sale of $1 million, and the amount recovered from the vehicle to be $980,050.00. The petition included alleged copies of corporate agreements between Fibercan and Ahmed Al-Rumaihi for the share transfers. While the copies of those agreements included the signatures of the Fibercan owners, identified below, it did not include Ahmed Al-Rumaihi's signature.

**ANSWER: Claimant admits he submitted a timely petition for remission through his attorney, but denies the remaining allegations.**

13.     CBP and HSI investigated the allegations contained in the petition and found that according to Michigan Secretary of State records, on May 24, 2019, Omar Ahmad and Islam Zughayer incorporated Fibercan, which is still an active Michigan corporation. The registered address for Fibercan is 17917 Hoder Road, New Buffalo, Michigan, but the address for its registered agent, Omar Ahmad, is in Palos Park, Illinois. Fibercan's articles of incorporation did not specify the nature of Fibercan's business. However, in its 2020 annual report, Fibercan declared that it was engaged in "agriculture and farming". Fibercan made no changes to its status to the Michigan Secretary of State's corporate record from 2021-2023. An internet search using the word "Fibercan" returned no results for the Michigan company.

**ANSWER: Claimant lacks sufficient knowledge to admit or deny the allegation. Accordingly, Claimant demands strict proof thereof and denies this allegation.**

14.     HSI determined, in its post-petition investigation, that Ahmed Al-Rumaihi did not wire the $2 million to purchase the 100 Fibercan shares directly to Fibercan. Instead, Ahmed Al-Rumaihi wired the money to AZ Management, a subsidiary of Fresh Roots, LLC. Omar Ahmad incorporated Fresh Roots in Michigan on August 5, 2019, and identified a Niles, Michigan registered business address. Currently, Fresh Roots is an active corporation, but is not in good standing with the state. HSI learned that on February 17, 2020, Circle

Federal Credit Union closed a financial account belonging to Fresh Roots (opened by Omar Ahmad and another individual) because the credit union detected a cannabis-related transaction.

**ANSWER: Claimant lacks sufficient knowledge to admit or deny the allegation. Accordingly, Claimant demands strict proof thereof and denies this allegation.**

15.    Beginning in 2021, the Michigan State Police (MSP) began investigating Fibercan's registered business address, 17917 Hoder Road, New Buffalo, Michigan. MSP received complaints of a large marijuana grow operation at that location. The Hoder Road address includes a single-family home on a semi-remote lot. MSP Officers reported smelling the scent of fresh marijuana emitting from the house, and noted additional grow house indicators including continuous building construction, covered windows, the apparent lack of a permanent resident, and frequent visits by persons with out-of-state vehicle license plates. In February 2023, Ahmed Al-Rumaihi listed the Hoder Road house, and other Michigan residential properties, for sale. MSP Lieutenant Shawn Yech visited the Hoder property and observed that the house had been converted into an indoor plant growing facility. He also observed two greenhouses on the property. Omar Ahmad sold the home on April 7, 2023.

**ANSWER: Claimant lacks sufficient knowledge to admit or deny the allegation. Accordingly, Claimant demands strict proof thereof and denies this allegation.**

16.    On March 21, 2022, HSI Task Force Officer Antonio Vazquez and Internal Revenue Service Special Agent (SA) Mike D'Andrea interviewed Omar Ahmad in the presence of his attorneys. Omar Ahmad stated that Ahmed Al-Rumaihi invested $2 million in Fibercan, a cannabinoid extraction processing facility[1]. Omar Ahmad told investigators that

---

[1] While marijuana is a controlled substance under Federal law, the State of Michigan permits the production, sale and use of marijuana under certain circumstances. See Michigan Compiled Laws (MCL) 333.27401 et al. The

Fibercan was located in Niles, Michigan. This was not true, Fibercan is located in New Buffalo, Michigan, whereas Fresh Roots is located in Niles, Michigan. Omar Ahmad said that Ahmed Al-Rumaihi invested $2 million in Fibercan, and shortly thereafter, the Cannabidiol (CBD) market crashed and Fibercan stopped operating. At the time of the interview, Omar Ahmad said that Fibercan was in the process of dissolving and liquidating its assets.

**ANSWER: Claimant lacks sufficient knowledge to admit or deny the allegation. Accordingly, Claimant demands strict proof thereof and denies this allegation.**

17.     Omar Ahmad further told investigators that after the CBD market crashed, Ahmed Al- Rumaihi complained about losing money, and Omar Ahmad agreed to repurchase half of Ahmed Al-Rumaihi's Fibercan stock for the original $10,000 per share, totaling $1 million. According to Omar Ahmad, Ahmed Al-Rumaihi requested a wire transfer of the $1 million, but Omar Ahmad told Ahmed Al-Rumaihi that he could only pay him in cash. Omar Ahmad told the investigators that he said this to Ahmed Al-Rumaihi because he had a large amount of cash on hand at the time and stated, "I guess I was just being lazy." When questioned further about the source of the of the $1 million in currency, Omar Ahmad stated that the money was from his firearms sales/range business named Eagle Sports Range (Eagle). Omar Ahmad further said that he kept the currency in a safe at the Eagle business. Omar Ahmad had never deposited the $1 million in Eagle proceeds used to pay Ahmed Al-Rumaihi into a bank account. Omar Ahmad allegedly used the proceeds of one business, to pay the debts of another. Omar Ahmad said that he never prepared a loan document from Eagle to Fibercan, and that he did not keep a logbook recording the amount of money withdrawn from the safe.

**ANSWER: Claimant lacks sufficient knowledge to admit or deny the allegation. Accordingly, Claimant demands strict proof thereof and denies this allegation.**

---

production and sale of marijuana is subject to certain state licensing requirements, and operating a marijuana processing facility without a license is a state criminal offense. MCL 333.27407a. Michigan's Cannabis Regulatory Agency online database does not identify Fibercan as a licensed marijuana business. See Cannabis Regulatory Agency at Adult-Use Establishments (michigan.gov).

18.     The $980,050.00 in U.S. Currency seized from suspected curriers showed no evidence that it was ever engaged in legitimate business. The corporations involved were in the cannabinoid extraction business and were not licensed. In addition, the U.S. Currency was not transferred through legitimate business means. Instead the U.S. Currency was sent from a separate company with no legitimate financial transaction records.

**ANSWER: Claimant denies.**

## Claim for Relief

WHEREFORE the Claimant prays the defendant property be returned and that the Court find that Claimant is the lawful owner of the property at issue.

## FIRST AFFIRMATIVE DEFENSE

Pursuant to 18 USC 983(d), Claimant asserts that he is an innocent owner of the seized property.

**THE LAW OFFICES OF HAYTHAM FARAJ**

/s/ *Matthew Amarin*
Matthew Amarin, Esq. (*admitted pro hac vice*)
**The Law Offices of Haytham Faraj**
1935 W Belmont Ave.
Chicago, IL 60657
Tel: (312) 635-0800
Matthew@farajlaw.com

**CERTIFICATE OF SERVICE**

I, Matthew Amarin, hereby certify that on September 5, 2023, I filed and served the forgoing document via electronic mail and the ECF system to:

Kimberly C. Bunjer at <u>kim.bunjer@usdoj.gov</u>

*/s/ Matthew Amarin*